UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KENT GRIFFEE

    VS

DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE RALI 2007-QS, ALIAS
DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC, MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-QS18

## COMPLAINT

Plaintiff, by his attorney, complains of Defendants as follows:

1.    Plaintiff is a resident of the State of Rhode Island with an address of 178 Progress Avenue, Providence, Rhode Island.  He has an ownership interest in said real estate located at 178 Progress Avenue, Providence, Rhode Island.

2.    Plaintiff executed a mortgage to National City Mortgage, A Division of National City Bank on August 21, 2006.   A copy is attached as Exhibit A.

3.    Defendant,  Deutsche Bank Trust Company Americas as trustee RALI 2006-QS18 ("Deutsche Bank") claims to have been assigned Plaintiff's mortgage.  However , there is no entity with this name. A copy of this purported assignment is attached as Exhibit B. Deutsche Bank is a Bank incorporated in the State of New York. The amount in controversy is more than $75,000.00 and this Court has diversity jurisdiction.

4.    PNC Bank, N.A. dba PNC Mortgage ("PNC") is a National Bank and operates as a debt collector, collecting debts on behalf of purported creditors and asserts that it is the loan servicer for the Plaintiff's mortgage

1

5. Bendett & McHugh, P.C. ("Bendett") on July 16, 2019, has scheduled a foreclosure sale for his home on September 13, 2019 at 1:00 PM as indicated by Exhibit C, solely on behalf of Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc.. Mortgage Asset-Backed Pass Through Certificates, Series 2006-QS18.

6. This purported trust does not exist and has never been assigned the mortgage.

7. There is no trust with the name of Residential Accredit Loans, Inc.. Mortgage Asset-Backed Pass Through Certificates, Series 2006-QS18.

8. There is an entity known as RALI Series 2006-QS18 Trust.

9. A copy of a Form 8-K Securities and Exchange Commission ("SEC") filing for this actual trust is attached as Exhibit D along with other Documents filed with the SEC attached as Exhibits D-1 and D-2 which indicate the actual name of this trust.

10. Through his attorney on July 30, 2019, a Request for Information was mailed to PNC Mortgage requesting the owner of the mortgage loan and mortgage note. A copy of this Request for Information is attached as Exhibit E.

11. Through his attorney on July 30, 2019, a Truth In Lending Request for the Identity of the owner of the mortgage loan and note was mailed to PNC Mortgage. A copy of this Truth in Lending request is attached as Exhibit F.

12. On August 9, 2019, pursuant to its obligations under the Real Estate Settlement and Procedures Act, Regulation X and the Truth in Lending Act, PNC identified the owner of Plaintiff's mortgage loan as PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC. A copy of this letter is attached as Exhibit G.

## COUNT I

### BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND DEALING

2

13. Paragraphs 1-12 are incorporated by reference.

14. Neither PHH, Ocwen, PNC nor Deutsche Bank have sent Plaintiff a notice pursuant to the provisions of paragraph 22 of the mortgage and have not accelerated the note. Plaintiff has never been sent a default notice, compliant with paragraph 22, from the owner of the note or mortgage or any entity acting on its behalf. Before an acceleration of the loan was declared, the Lender or an agent acting on its behalf was required to send Plaintiff a notice to his home address which specified:

   a. the default;

   b. the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

   c. that failure to cure the default on or before the date specified in the Notice may result in the acceleration and sale of our home

   d. the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

15. Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE**

**and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

16. The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

17. Any attempted exercise of the statutory power of sale to Plaintiff will be defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

18. PNC mailed Plaintiff a letter dated December 6, 2011, which it claimed to be a default notice. A copy is attached as Exhibit H.

19. This letter did not comply with Paragraph 22 of the mortgage.

20. Paragraph 22 (c) of the mortgage required a default notice which specified:
**(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured**

21. However this letter did not specify a particular date for the cure date. Instead it stated:

You may correct your default by paying $7,256.96 in certified funds on or before January 20, 2012, 1/1/2012 payment and applicable late charges, property inspection fees and non-sufficient funds fees.

4

22. This letter thus was not consistent with the terms of the mortgage and did not accurately state the arrearage at this time. The initial monthly payment under the terms of this mortgage was $2430.55, which increased due to escrow changes. However on December 6, 2011 he was only in arrears for the November, 2011 payment, which was not $7256.96. He does not have the exact amount. However it was less than $2500.00 for the November payment and less than $2500.00 for the December 1, 2011 payment, which was not past due on December 6, 2011.

23. The mortgage in paragraph 22(c) specifically states that a specific date must be provided, not a date on or before another date.

24. As a result there was no strict compliance with the terms of the mortgage due to the fact that the letter, deceptively and not in strict compliance with the terms of the mortgage, falsely stated that he was required to cure the default within thirty days of the date of the letter, which was not in strict compliance with the terms of the mortgage.

25. The letter deceptively indicated to him that an nonspecific amount to cure the default must be received in certified funds.

26. The mortgage did not require that he was required to pay any arrearage by certified fund.

27. The only provisions of the mortgage which required payment by certified funds was paragraph 1.

28. Paragraph 1 of the mortgage stated:

In the event that any check or other instrument was returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:
(a) cash;(b) money order;(c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

5

29. Plaintiff never provided any lender or mortgagee or loan servicer a check with insufficient funds to pay the mortgage, which was returned unpaid.

30. Plaintiff was never advised by any lender or mortgagee or loan servicer that a check had been returned for nonpayment and that as a result all payments had to be paid by (a) cash;(b) money order;(c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

31. Despite the fact that he never provided a payment check with insufficient funds, which was returned unpaid, the letter deceptively advised him that the only way to cure the purported default was by certified funds.

32. This letter deceptively and falsely imposed an additional condition on the requirements to cure any arrearage, namely payment by certified funds to pay to PNC.

33. This additional deceptive and falsely stated condition did not strictly comply with the terms of the mortgage.

34. In fact, no language in the terms of the mortgage required payment of the arrearage by certified funds

35. For this additional reason, this letter did not strictly comply with the terms of the mortgage.

36. This letter did not specify a specific and accurate amount which had to be cured on a particular date.

37. The amount stated as $7,256.96 was not an accurate amount of the purported default as indicated previously. This included the December, 2011 payment which was not yet due to the grace period in the mortgage and the January 2012 payment which was not a portion of the arrearage, as it had not yet come due.

38. The contractual language in the mortgage required thirty days to cure after notice was properly given to him to cure the amount in default.

39. The deceptive inclusion of additional unspecified and indeterminate amounts did not provide him the thirty days required to cure these amounts under the terms of the mortgage.

40. Plaintiff reasonably expected that under the mortgage documents that he was entitled to a default letter pursuant to the terms of the mortgage, which would declare a certain amount in default and that he be provided at least thirty days to cure this specific amount.

41. The additional deceptive language, which created the obligation to pay additional amounts determined by PNC in its letter did not comply with the terms of the mortgage at all.

42. The additional deceptive language, which created the obligation to pay additional amounts determined by PNC in its letter did not strictly comply with the terms of the mortgage.

43. PNC's inclusion of deceptive terms not permitted by the terms of the mortgage in a default letter rendered this letter invalid.

44. As a result the Defendant was not authorized to accelerate the mortgage loan and was not authorized to exercise the statutory power of sale.

45. The letter advised him that he had a right to reinstate after acceleration.

46. As indicated above, it deceptively advised him how to reinstate the loan by contacting PNC at 1-800-523-8654 and to make a payment by certified funds.

47. However when this information was given, the letter deceptively did not advise him that the right to reinstate the mortgage loan would expire five days before the sale date.

48. The deceptive nature of this letter by not advising him of the limitations on the right to reinstate did not strictly comply with the terms of the mortgage and as a result was defective, which precluded the exercise of the statutory power of sale.

49. The mortgage was drafted by National City Mortgage, N.A., the originator of the mortgage loan, with no input from Plaintiff as to its terms.

50. The letter also stated:

Q4. What should I do if I do not have all the past due amount that is required?
Answer: PNC Mortgage has several options that may be available to assist you. Please call us at
1-800-523-8654 to talk with a representative about the available options.

51. Due to this failure to comply with the terms of the mortgage no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property.

52. The actions of Deutsche Bank constituted a breach of contract, resulting in damages to the Plaintiff who hired an attorney to commence this case.

53. The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

54. Deutsche Bank violated the covenant of good faith and dealing by scheduling a foreclosure sale in violation of the terms of the mortgage by seeking to exercise the statutory power of sale without the lender having first sent a default notice to the Plaintiff, which contained language required by the terms of the mortgage.

55. The failure to send an accurate default letter pursuant to the terms of the mortgage and then mailing a Notice of Sale were actions taken contrary to the contractual and statutory obligations of the parties.

56. As a result, Plaintiff has incurred the following damages:

    a. Plaintiffs have incurred the cost of filing this action in the form of filing fees and service fees, incurred in order to

      stop the nonjudicial foreclosure, which was in violation of the terms of the mortgage.

  b.  Plaintiff's mortgage loan account has been charged fees and costs which were not permitted without a valid default letter having being sent to him.

  c.  Plaintiff has incurred damages for Plaintiffs' aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety. He has incurred stress with mail advising him that his home will be sold at a public auction.

  d.  Plaintiff has incurred attorney fees and costs to obtain an injunction to stop the illegal foreclosure.

  e.  Plaintiff has incurred attorney fees and costs for the prosecution of this action.

58. The conduct of Deutsche Bank was willful, wanton and reckless, warranting the imposition of punitive damages.

59. Deutsche Bank ignored the clearly stated terms of the mortgage and case law in this Court holding that a mortgage contract involves strict compliance in order to exercise the statutory power of sale.

60. Instead Deutsche Bank has gone forward and have sought to exercise the statutory power of sale without a valid default notice.

61. Deutsche Bank has breached the mortgage contract by charging the Plaintiff excessive and unreasonable and unnecessary expenses for a previous improper foreclosure and inaccurate charges.

62. Deutsche Bank has breached the contract by charging monthly property inspection wo the mortgage loan account which were neither reasonable nor necessary and which were not actually paid contrary to the terms of the mortgage.

 WHEREFORE, Plaintiff demands the following relief:

a. Damages against Deutsche Bank for failure to comply with the terms of the mortgage.

b. Damages against Deutsche Bank for charging the Plaintiffs unreasonable and unnecessary foreclosure fees and other improper and unreasonable and unnecessary costs charged to the mortgage loan account.

c. Actual damages attributable to the aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety and stress suffered by the Plaintiffs.

d. Damages for punitive damages

e. Legal fees from Deutsche Bank pursuant to the provisions of R.I.G.L § 9-1-45.

f. All other just and proper relief.

KENT GRIFFEE
By his Attorney

September 12, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT II

## INJUNCTIVE RELIEF

63. Paragaraphs 1-62 are incorporated by reference.

64. Plaintiff never granted a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS").

65. Plaintiff never designated MERS as the nominee for the owner of the mortgage note.

66. Exhibit I is the purported assignment to MERS, its successors and assigns, which is dated as September 22, 2006.

67. This document has a hand written numbering which indicates that the loan has a MIN number of 10026961011106797483.

68. This document also has a different print font which indicates that the loan has a Pool number 0001206051.

69. This document also has a different font and stamp indicating that the assignee was Mortgage Electronic Registration Systems, Inc., its successors and assigns.

70. The purported Trust in question which claims to be the owner of the mortgage loan did not come into existence until November 7, 2006 as indicated by Exhibit J, its index on the website of the Securities and Exchange Commission.

71. These facts indicate that this purported assignment of mortgage dated September 22, 2006 was executed without an assignee listed.

72. Such an assignment is an assignment in blank, which does not have a grantee and is void under Rhode Island law.

73. A Rhode Island mortgage assignment, under 34 R.I.G.L 34-11-12(6) must convey the mortgage to an entity in the following form:

(6) ASSIGNMENT OF MORTGAGE.

holder of a mortgage by to dated

recorded in the records of deeds in in book

no. at page, for consideration paid, assign the mortgage and the note and claim secured thereby to

Witness hand this day of (Here add acknowledgment.)

    74.    In Rhode Island a mortgage is a conveyance of land, which requires consideration , a grant to a grantee and delivery.

    75.    The original of Exhibit J was not for consideration, was not granted to a grantee and was not delivered on September 22, 2006.

    76.    As a result when MERS purported to convey the mortgage and note to Deutsche Bank, it owned nothing to assign.

    77.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

    78.    The failure of the Defendant to comply with the terms of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to conduct this foreclosure.

    79.    The void assignment to the party, which does not exist and has not been assigned the mortgage note or the right to exercise the statutory power of sale renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

    80.    The identification of PHH Mortgage Corporation as the owner of the mortgage loan and note indicates that Deutsche Bank cannot exercise the statutory power of sale.

81. PNC notified Plaintiff by a letter dated August 30, 2019 that it will consider him for mortgage assistance. A copy of this letter is attached as Exhibit K.

82. PNC notified him by another letter dated September 6, 2019 that it will consider him for mortgage assistance. A copy of this letter is attached as Exhibit L.

83. Plaintiff will apply for a loan modification by downloading the application referenced in the September 6, 2019 letter.

84. Plaintiff lives in this property, as his only residence.

85. These facts demonstrate that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of his home by a party not entitled to foreclose on the property will cause him irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants.

86. Such relief sought by Plaintiff will not disserve the public interest if imposed.

WHEREFORE, Plaintiff demands that this Court:

a. Grant a Preliminary Injunction Restraining and Enjoining Deutsche Bank or PNC or any other entity acting on their behalf from conducting, advertising or continuing a foreclosure sale at 278-280 Progress Avenue, Rhode Island, Rhode Island pending a hearing on a Permanent Injunction.

b. Grant a Permanent Injunction Restraining and Enjoining Deutsche Bank or PNC or any other entity acting on their behalf from conducting, advertising or continuing a foreclosure sale at 278-280 Progress Avenue, Rhode Island, Rhode Island until further Order of this Court.

c. Award the Plaintiff actual damages and compensatory damages and legal fees and costs against the Defendants for scheduling a foreclosure without complying the terms of the mortgage

d. Grant all other just and proper relief.

                                        KENT GRIFFEE
                                        By hIS Attorney

September 12, 2019                /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com

Plaintiff demands a Trial by Jury